UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TIFFANY GLENN,

             Plaintiff,

      v.

TERMINAL RAILROAD ASSOCIATION
OF ST. LOUIS and TCU LOCAL 574,

           Defendants.

Case No. 14-cv-328-JPG-DGW

## MEMORANDUM AND ORDER

This matter comes before the Court on the motions for summary judgment filed by

defendant Transportation Communications Union Local 574 ("TCU Local 574") (Doc. 39),

defendant Terminal Railroad Association of St. Louis ("Terminal Railroad") (Doc. 40), and

plaintiff Tiffany Glenn (Doc. 41).   TCU Local 574 has responded to Glenn's motion, which was

only directed at it (Doc. 47), Glenn has responded to the defendants' motions (Docs. 46 & 48), and

Terminal Railroad has replied to Glenn's response to its motion (Doc. 50).

## I.     Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P.

56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind.,*

*Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).   The reviewing court must construe the evidence in the

light most favorable to the nonmoving party and draw all reasonable inferences in favor of that

party.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520

F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.   This standard is applied with special

scrutiny in cases, such as employment discrimination cases, that often turn on issues of intent and

credibility.  *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000).

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial.  *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013).  Where the non-moving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways.  It may present evidence that affirmatively negates an essential element of the non-moving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the non-moving party's case without actually submitting any evidence of its own, *see* Fed. R. Civ. P. 56(c)(1)(B).  *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169.  If the moving party bears the burden of persuasion at trial, it must present conclusive evidence justifying a judgment in its favor.  *See EEOC v. Union Independiente De La Autoridad de Acueductos Y Alcantarillados De P.R.*, 279 F.3d 49, 55 (1st Cir. 2002); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion.  *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists.  *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168.  A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists only if "a

fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."
*Anderson,* 477 U.S. at 252.

## II.    Facts

Viewed in the light most favorable to the non-moving party, the evidence establishes the following relevant facts.

Glenn, an African-American woman, began working as a clerk for Terminal Railroad in September 2011.   TCU Local 574 is a local labor union that represents employees of Terminal Railroad, including Glenn.   Glenn's employment was governed by a March 1, 1973 collective bargaining agreement ("CBA"), which was in place at all times relevant to this dispute.

Generally, under the CBA, employees' seniority governs whether and the order in which they are hired, promoted or let go.   Thus, when an employee loses his position, for example, in a reduction in force, the employee may use his seniority to displace, or "bump," an employee with less seniority from another position and then work in that position.   The bumped employee may then, in turn, displace someone with even less seniority, and on down the line until the person with the lowest seniority is displaced.   However, certain clerical positions are exempt from this seniority rule pursuant to an April 6, 1972, memorandum of understanding between Terminal Railroad and TCU Local 574.   Those positions, called "company select" or "B-2" positions, are filled at the discretion of Terminal Railroad notwithstanding seniority rules.

Rule 17 of the CBA also provides certain notice requirements where there is a reduction in force, that is, where positions are abolished.   Rule 17 states, in pertinent part, "Any reduction in force shall be bulletined at least five (5) working days in advance of the effective date reduction is to be made. . . .   Bulletins will show position or positions to be abolished and the names of the

occupants thereof."   CBA at 13.   Rule 17 permits employees whose positions are abolished to bump another employee with lower seniority (except, of course, for those in B-2 positions whose seniority is irrelevant).   *Id.*   If there is no bumpable employee, the displaced worker is considered furloughed.   *Id.* at 13-14.   The rule further requires copies of the bulletins and a list of furloughed employees be provided to the general chairman of the union, although it does not provide a timeframe in which this must be done.   *Id.* at 14.   There is no advance notice requirement when an employee is displaced by a more senior employee whose position has been abolished; only advance notice of position abolishments is required.

A.    Glenn's Dealings with Terminal Railroad

When Glenn was hired, she was not hired as a regular Terminal Railroad clerk but as one of two clerks on the Guaranteed Extra Board ("GXB").   GXB employees are guaranteed forty hours of work per week, or pay for forty hours if they are not actually assigned to work forty hours. They do not hold a set position but fill in for regular employees who, for one reason or another, are not working that day.   The Non-Guarantee Extra Board ("XB") provides similar coverage for regular employees who are absent from work, but XB employees are not guaranteed a certain level of work or pay and are only paid for the time they actually work.   They may not work forty hours a week.   As a member of the GXB, Glenn's employment was covered by the 2002 Guaranteed Extra Board Agreement ("GXB Agreement") between Terminal Railroad and TCU Local 574.

Following a downturn in business in late 2012, Terminal Railroad began reducing its workforce.   As part of this downsizing, Terminal Railroad's clerk supervisor Adam Mahlandt decided to abolish some clerk positions:   three regular clerks and one GXB clerk.   On December 1, 2012, Mahlandt made the decision to abolish one of the two GXB clerk positions.   Ordinarily,

decisions to eliminate GXB positions would be governed by a formula spelled out in the GXB Agreement that took into account the number of days other clerks were expected to be absent, that is, the expected number of work days GXB clerks would be needed.   However, Mahlandt did not apply this formula, instead relying on the general slowdown in business and reductions in other parts of the workforce to justify reducing the GXB clerical workforce as well.   In fact, had Mahlandt applied the formula correctly, elimination of the second GXB clerk position would have been justified.[1]   Terminal Railroad did not post an advance notice of abolishment of the GXB position as required by Rule 17 of the CBA, and did not send a notice to TCU Local 574 at that time.

At the time Terminal Railroad abolished the second GXB position, Glenn and Tracie Fry, a white woman, were the two GXB clerks, Fry having more seniority than Glenn.   When the GXB position was eliminated, Glenn was moved from the GXB to the XB, effectively ending her guaranteed pay for forty hours a week.   The parties refer to this move as a "furlough" even though Glenn actually remained a Terminal Railroad employee on the XB.   Fry remained on the GXB, at least for the time being.

Terminal Railroad did not allow Glenn to bump Dennis Bosco, a white male clerk with less seniority than she had.   Bosco held the position of chief clerk of maintenance of way ("MOW") in the engineering department, a B-2 position.   Glenn had applied for this position earlier in 2012, but Terminal Railroad hired Bosco instead of her despite her greater seniority.   The chief clerk of MOW was a regular clerk position, not a GXB position, was not in Glenn's department and was not supervised by Mahlandt.   Bosco was allowed to remain in his position despite Terminal

---

[1] A Terminal Railroad representative testified in his deposition that the elimination of a GXB position would not have been justified under the formula, but later clarified that at the deposition he had used a faulty assumption about one clerk's entitlement to vacation in his calculation and that, using the proper assumption, the elimination was justified.

Railroad's reduction in force.   To this day, Glenn remains employed by Terminal Railroad on the XB but she does not earn as much as she would have on the GXB.

     B.    <u>Glenn's Dealings with TCU Local 574</u>

Glenn did not complain to TCU Local 574 when she was passed over for three regular clerk positions in the spring and summer of 2012.   As a consequence, TCU Local 574 did not investigate those hires and did not file grievances relating to those decisions.

In mid-January 2013, the hours Terminal Railroad called on Glenn to work as an XB clerk significantly fell. [2]   Concerned about her falling income, in mid-February 2013 Glenn called Theresa Gill, TCU Local 574's local chairperson and the person responsible for deciding whether TCU Local 574 would file a grievance on Glenn's behalf.   She complained to Gill that Terminal Railroad had furloughed her without formally notifying her of the furlough and would not allow her to bump Bosco, an employee with less seniority than she had.   Glenn provided supporting documentation to Gill, who then investigated Glenn's complaints by contacting Brad Ragland, Terminal Railroad's director of labor relations, in early March 2013.   Gill was told by Brad Ragland that Glenn had indeed been furloughed and had not been allowed to bump Bosco because Bosco was in a B-2 position not subject to seniority rules or bumping.   Gill informed Glenn of Brad Ragland's response.

In the meantime, Glenn contacted national TCU representative Robert Ragland, who is responsible for pursuing grievances if they are denied at the local level.   Glenn complained to Robert Ragland that she had not been given proper notice that she had been displaced from the GXB and had been furloughed and that earlier Terminal Railroad had hired Bosco for the chief

---

[2] Terminal Railroad personnel and Local 574 personnel on occasion refer to January 16, 2013, as Glenn's furlough date, although Glenn maintains the furlough occurred on December 1, 2012, when she was removed from the GXB.

clerk of MOW position despite her seniority.   Robert Ragland asked Glenn to provide documents and details regarding her work schedule and her seniority to support her claim against Terminal Railroad.   Glenn sent the requested information to Gill, but Gill never received it.

Nevertheless, Gill continued to investigate and came to believe that Terminal Railroad had abolished four regular clerk positions, that the holders of those positions exercised their rights to bump those with less seniority, and that the domino effect of those bumpings was to displace Glenn from the GXB because she had the lowest seniority of any clerk except Bosco.   Gill asked Brad Ragland to put Glenn back on the GXB and provide back pay, but he refused, insisting that Glenn had been displaced because of other more senior employees whose positions had been abolished.   Terminal Railroad informed Gill that no notice was required for this type of furlough since Glenn's position had not been abolished.   Gill did not inquire about the formula in the GXB Agreement for reducing GXB positions because, based on information she received from Terminal Railroad, she was under the impression Glenn had been displaced from her position by a more senior clerk, not that her position had been abolished in a reduction in force.

On March 21, 2013, Gill told Glenn that she thought her claim would not be successful because Terminal Railroad was furloughing employees throughout the company and Glenn did not have the seniority necessary to keep a clerk job.   She also explained that she believed Glenn could not bump Bosco because he had a B-2 position where her seniority was meaningless.   For these reasons, Gill decided TCU Local 574 would not file a grievance on Glenn's behalf.   Glenn told Gill she was planning on suing Terminal Railroad for discrimination and asked for TCU Local 574's help, but Gill said TCU Local 574 did not want to get involved in the lawsuit.   Glenn never asked Gill to file a grievance on her behalf, and Gill never filed one.

Shortly thereafter, on March 25, 2012, after Robert Ragland pointed out to Terminal Railroad that TCU Local 574 had not received copies of any notices announcing the abolishment of positions or any notice of Glenn's furlough, Mahlandt sent Gill and Robert Ragland a letter stating that Glenn had been bumped and furloughed on January 16, 2013, because she did not have enough seniority to displace a junior employee.   Robert Ragland never received a notice announcing the abolishment of Glenn's GXB position.

It was not until well into this litigation that TCU Local 574 realized that Glenn had been furloughed because her GXB position had been abolished and not because she had been displaced from that position by a more senior clerk.   Indeed, in its answer filed June 17, 2014, Terminal Railroad represented that Glenn had been "bumped by her fellow union member" from the GXB to the XB (Doc. 10, ¶ 5).   It appears Terminal Railroad first officially represented that Glenn's furlough was a result of the abolishment of her position in the deposition of Brad Ragland on December 17, 2014, and that Brad Ragland's March 25, 2013, letter to Robert Ragland had been incorrect.   Thus, it was not until that time that TCU Local 574 realized Terminal Railroad had not provided the notice of abolishment required under Rule 17 the CBA when a position is abolished.

In connection with Robert Ragland's representation of Glenn in an unrelated grievance in the summer of 2014, he used the phrase, "Homey don't play that," in an effort to convey to Glenn he was not going to play any games with Terminal Railroad and was going to try to keep Terminal Railroad from disciplining Glenn in that later dispute.   Glenn also notes that TCU Local 574 filed grievances in 2012 and 2013 on behalf of two white clerks but no African-American clerks.

C.   Procedural History

In April 2013, Glenn filed two charges with the Equal Employment Opportunity

8

Commission ("EEOC").   One was against Terminal Railroad complaining that it discriminated against her on the basis of sex and race when it decided to furlough her.   The second was against TCU Local 574 complaining that it had failed to represent her in December 2012 because of her sex and race.   The EEOC never issued a right to sue letter relating to Glenn's charge against TCU Local 574.

In March 2014, Glenn filed this lawsuit alleging in Count 1 that Terminal Railroad removed her from the GXB because of her race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[3]   In Count 2, she alleges TCU Local 574 also discriminated against her on the basis of race and sex in violation of Title VII when it failed to file grievances complaining of Terminal Railroad's failure to promote Glenn to a regular clerk position three times, including the failure to hire her as the chief clerk of MOW, and of Glenn's December 2012 furlough.   She further claims in Count 2 that TCU Local 574's failure to grieve these actions breached the duty of fair representation implied by the Railway Labor Act, 45 U.S.C. § 151 *et seq. See Steele v. Louisville & Nashville R.R. Co.,* 323 U.S. 192 (1944).

Terminal Railroad now asks for summary judgment on Count 1 on the grounds that Glenn has no direct evidence of discrimination by Terminal Railroad and cannot establish a *prima facie* case of discrimination or prove pretext under the *McDonnell Douglas* indirect burden-shifting method of withstanding summary judgment.   *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).   Glenn admits she has no direct evidence of discrimination by Terminal Railroad but believes she can establish a *prima facie* case and show pretext under the *McDonnell Douglas* method.

---

[3] Glenn pled additional claims asserting Terminal Railroad failed to promote her to regular clerk positions from the GXB in the spring and summer of 2012 because of her sex and race, but the Court dismissed those claims because she did not present them in her charge to the EEOC before filing this lawsuit.

TCU Local 574 asks for summary judgment on Glenn's Title VII claim in Count 2 on the grounds that Glenn failed to exhaust her administrative remedies and that there is no evidence it discriminated against her on the basis of her race or sex in connection with its failure to grieve either her furlough or the failures to hire.   As for Glenn's claim for breach of the duty of fair representation, TCU Local 574 argues Glenn's complaint was filed beyond the statute of limitations and that, in any case, its representation of her was adequate.   Glenn does not respond to TCU Local 574's arguments with respect to her Title VII claims but contends her fair representation claim is timely because she first discovered Terminal Railroad abolished her GXB position without proper notice in discovery for this case in December 2014 and that the claim has merit because TCU Local 574 did not grieve this breach of the CBA.   She points to the isolated statement by Robert Ragland in the summer of 2014 to show the failure to grieve the breach was motivated by race, and his dealings with Terminal Railroad in March 2013 to show his bad faith.

Glenn asks for summary judgment on her fair representation claim in Count 2 for the same reasons she sets forth in her response to TCU Local 574's summary judgment motion, and TCU Local 574 responds with the arguments set forth in its summary judgment motion.

**III.**   **Analysis**

    A.   <u>Count 1:   Title VII Discrimination Claim against Terminal Railroad</u>

Title VII prohibits discrimination on the basis of race or sex:   "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex. . . ."   42 U.S.C. § 2000e-2(a)(1).   Terminal Railroad denies it furloughed Glenn to the XB on the basis of

her race or sex and asks the Court for summary judgment in its favor on Count 1.

The parties focus on the indirect method of withstanding summary judgment set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   Under this approach in a run-of-the-mill demotion or termination situation, a plaintiff must first establish a *prima facie* case of discrimination by presenting evidence that: (1) she is a member of a protected class, (2) she was meeting her employer's legitimate expectations, (3) she suffered an adverse employment action and (4) she was treated less favorably than others not in the protected class who were similarly situated.  *Zayas v. Rockford Mem. Hosp.*, 740 F.3d 1154, 1157 (7th Cir. 2014).   A plaintiff's successful demonstration of each of these elements creates a rebuttable presumption of discrimination.   *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012).   The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action.  *Zayas*, 740 at 1157.   If the defendant is able to provide evidence of such a reason, the burden shifts back to the plaintiff to show that the articulated reason is actually a pretext.  *Zayas*, 740 at 1157.

      1.   *Prima Facie* Case

Terminal Railroad does not dispute that Glenn can prove the first three elements of the standard *prima facie* case.   It contends, however, that she has no evidence of the fourth element: that a similarly situated employee outside of her protected group that was treated more favorably than she was.   Glenn contends Bosco was such an individual, but Terminal Railroad argues Bosco was not similarly situated because he held a B-2 regular clerk position instead of a GXB position and was not supervised by Glenn's supervisor, Mahlandt.

The purpose of the requirement that another employee be similarly situated is to reveal

11

whether the employees were treated differently for a reason other than their otherwise equal or comparable situations. *See Coleman v. Donahoe*, 667 F.3d 835, 846-47 (7th Cir. 2012). To determine if employees are similarly situated, the Court should conduct a "flexible, common-sense examination of all relevant factors." *Id.* at 846 (internal quotations omitted). If employees in and out of the protected group are similarly situated but treated differently, it is reasonable to infer the different treatment for members of the protected group is because of their membership in that group. *Id.* This inference is essential to support the *McDonnell Douglas prima facie* case and its rebuttable presumption of discrimination.

Similarly situated individuals must be directly comparable in all material respects but need not be identical to the plaintiff in every way. *Id.* Insignificant distinctions between employees are not enough to render them inappropriate comparables as long as a comparison is still meaningful to support an inference of discrimination. *Id.* at 846-47. Generally, to be comparable, employees must at a minimum share a supervisor or employment decisionmaker and be subject to the same standards. *Id.* at 847.

Glenn contends Bosco is similarly situated to her for the purposes of the standard *McDonnell Douglas prima facie* case. The Court does not believe any rational jury would agree. Glenn and Bosco worked in different departments holding different kinds of clerk jobs and were supervised by different individuals making decisions about Terminal Railroad's reduction in force. Even though they were both clerks and were subject to the same seniority system overall, the fact that the position Glenn held was abolished and the position Bosco had was not does not reasonably support an inference that they were treated differently because of their race or gender. First, although technically Glenn and Bosco were subject to the same CBA, as the B-2 chief clerk of

12

MOW, Bosco was not subject to the CBA's seniority system.   Additionally, Mahlandt, Glenn's supervisor, was responsible for the decision to eliminate a GXB clerk position, but he had no responsibility for the decision not to eliminate Bosco's non-GXB B-2 clerk position.   His decision not to eliminate a position over which he had no authority does not in the least suggest a difference in treatment because of race or sex.   On the contrary, it reflects the reality that his power was limited to those he supervised.   The evidence does not show that any of those clerks were similarly situated to Glenn, including Fry who was not similarly situated because she had more seniority in the same category of non-B-2 employment.

The fact that Bosco may have originally obtained his B-2 regular clerk position in an irregular manner does not change this analysis.   Glenn claims Terminal Railroad discriminated against her because of her race and sex when it hired Bosco over her as chief clerk of MOW.[4] While that might be helpful to support other inferences relevant to proof of discrimination such as pretext, it does not render Bosco a comparable employee for purposes of the fourth element of Glenn's *prima facie* case.

For these reasons, the Court finds Glenn has not established a *prima facie* case of race or sex discrimination using the standard *McDonnell Douglas* burden-shifting mechanism.[5]

---

[4] As noted above, Glenn cannot pursue that discrimination claim against Terminal Railroad in this litigation because she failed to present that claim in her EEOC charge.

[5] It appears Glenn may have been able to argue that she could withstand summary judgment using a reduction in force theory.   The *prima facie* test is altered slightly if there is a reduction in force where the plaintiff's duties are redistributed among other workers.   In that situation, addressed most often in the age discrimination context, a plaintiff can establish the fourth element of the *prima facie* case by showing that after her departure, her duties were absorbed by workers outside her protected class who were not forced out.   *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 690-91 (7th Cir. 2006); *Filar v. Board of Educ. of City of Chi.*, 526 F.3d 1054 (7th Cir. 2008). However, Glenn has not argued that this iteration of the *prima facie* case should apply and has not pointed to evidence showing that her work was ultimate absorbed by others not in her protected classes.   Therefore she has waived these arguments.

Nevertheless, for the sake of completeness, the Court looks at Terminal Railroad's proffered reason for eliminating the Glenn's GXB position and Glenn's evidence that its reason was a pretext for discrimination.

### 2.    Pretext for Discrimination

Even assuming Glenn had been able to establish a *prima facie* case, Terminal Railroad has offered a legitimate, non-discriminatory reason for eliminating the second GXB position and selecting her, as opposed to Fry, as the GXB clerk to be furloughed.   Terminal Railroad states that it eliminated four clerk positions, including a GXB clerk position, because of a downturn in business.   This is recognized as a legitimate reason for a business' eliminating a position.   *See Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 492 (7th Cir. 2007); *Ritter v. Hill 'n Dale Farm, Inc.*, 231 F.3d 1039, 1043-44 (7th Cir. 2000); *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1013 (7th Cir. 2000).   It also states that it furloughed Glenn instead of Fry because Fry had more seniority in the same category of employment, another legitimate reason for favoring one employee over another, especially where employment is governed by a CBA.   *See Abulullah v. Welch Vacuum Tech., Inc.*, 182 F.3d 921, 921 (7th Cir. 1999); 42 U.S.C. § 2000e-2(h) (stating that it is not unlawful to apply different terms, conditions or privileges of employment based on a *bona fide* seniority system).   Thus, the burden shifts back to Glenn to show Terminal Railroads proffered reason was a pretext for discrimination.

At the pretext stage, the question is not whether the employer's proffered reason is correct or wise but whether it is the true and genuine reason for the employer's action rather than a pretext for a decision based on some other, undisclosed reason.   *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006).   The plaintiff "ultimately must be able to point to some

circumstances from which an inference can be drawn that the real reason for the employment action was discriminatory."   *McGowan v. Deere & Co.*, 581 F.3d 575, 581 (7th Cir. 2009); *see Hobbs v. City of Chi.*, 573 F.3d 454, 462 (7th Cir. 2009); *Perez v. Illinois*, 488 F.3d 773, 778 (7th Cir. 2007).   If the proffered reason is the true reason for the employer's decision, the employer is entitled to summary judgment.   *Forrester*, 453 F.3d at 417.   If the proffered reason is not the true reason, and if the evidence used to establish the plaintiff's *prima facie* case combined with evidence of the defendant's dishonesty in the proffered reason is sufficient to create an inference of discriminatory intent, the case must be decided by a jury.   *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146-49 (2000); *McGowan*, 581 F.3d at 582.   The ultimate burden of persuasion remains at all times with the plaintiff.   *Reeves*, 530 U.S. at 143 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

Glenn argues that Terminal Railroad's proffered reason for eliminating a GXB position is not "legitimate" because it was not based on the formula required by the GXB Agreement to decide whether to abolish a GXB clerk position.   It may be true that Mahlandt was wrong not to use this formula and instead to act on a vague gut feeling that clerk positions needed to be eliminated, but the Court cannot assign liability based on unsupported or incorrect business decisions, only discriminatory ones.   In this case, there is no evidence from which a reasonable jury could conclude that Mahlandt's general sense that a reduction was needed was not the true and genuine reason for deciding to abolish a GXB position and that the decision was based on some other, undisclosed reason.

Nor is there evidence from which a reasonable jury could conclude that Terminal Railroad's proffered reason, even if it were dishonest, was a pretext for race or sex discrimination.

As discussed above, the evidence does not show a similarly situated person outside Glenn's protected groups was treated better than Glenn.   Additionally, Glenn suggests that the decision to hire Bosco instead of her as the chief clerk of MOW is evidence of race and sex animus that would support a finding of pretext.   The Court disagrees.   While there might have been irregularities in hiring Bosco over Glenn, nothing in the record suggests those irregularities were motivated by race or sex as opposed to favoritism for various other reasons.   Indeed, the failure to hire Glenn in light of her seniority does not imply discrimination; as a B-2 position, the chief clerk of MOW was not subject to seniority rules.   There is simply no evidence from which a jury could reasonably infer that Terminal Railroad's reasons for eliminating a GXB clerk position and for furloughing Glenn instead of Fry was pretext for race or sex discrimination.

For these reasons, Terminal Railroad is entitled to summary judgment on Count 1.

B.     Count 2:   Title VII Discrimination Claim Against TCU Local 574

In addition to prohibiting employers from discriminating against employees on the basis of race or sex, Title VII also prohibits unions from discriminating against its members on the basis of race or sex:   "It shall be an unlawful employment practice for a labor organization to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race [or] sex. . . ."   42 U.S.C. § 2000e-2(c).   TCU Local 574 claims that Glenn cannot sue under this provision because she has not obtained a right to sue letter from the EEOC, a condition precedent to filing suit, and that, even if she were to be able to sue, her claim has no merit because she was furloughed due to lack of seniority and was treated by TCU Local 574 no differently than any other member.   Glenn does not respond to these arguments.   In light of the following, the Court believes it is appropriate to construe Glenn's lack of response as an admission of the merits of the

motion pursuant to Local Rule 7.1(c).

### 1.   Representation in Connection with Failures to Promote

Glenn has not presented to the EEOC her claims of discrimination in connection with TCU Local 574's failure to grieve Terminal Railroad's failure to promote her to a regular clerk position three times.   Title VII requires a plaintiff to present her Title VII claims to the EEOC before filing a federal lawsuit.   42 U.S.C. § 2000e-5(f)(1); *Gorence v. Eagle Food Ctrs, Inc*., 242 F.3d 759, 763 (7th Cir. 2001).   A Title VII plaintiff may sue only on "those claims that were included in her EEOC charge, or that are like or reasonably related to the allegations of the charge and growing out of such allegations."   *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 689 (7th Cir. 2001) (internal quotations and citations omitted); *accord Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010).   Claims are "like or reasonably related" if there is a factual relationship between them, that is, if the charge and the complaint "describe the same conduct and implicate the same individuals."   *Haugerud*, 259 F.3d at 689 (internal citations and quotations omitted); *accord Swearnigen-El*, 602 F.3d at 864.   If there is such a factual relationship, the Court then asks whether the lawsuit claim could reasonably have developed from the EEOC's investigation of the charge.   *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996).   If so, the target of the charge will have had fair warning of the claims against it and a fair chance to settle the dispute during the administrative proceedings.   *Haugerud*, 259 F.3d at 689.

It is undisputed that Glenn's EEOC charge against TCU Local 574 does not mention a failure to represent her in connection with the three alleged failures to promote her in the spring and summer of 2012.   The relevant question, then, is whether her claims are sufficiently related, that is, whether TCU Local 574's representation in connection with Glenn's furlough was so

17

related to its representation in connection with the failures to promote that her charge and the EEOC's subsequent investigation put TCU Local 574 on notice of Glenn's claim for discriminatory representation in connection with the failures to promote.

The Court believes the instances of discrimination alleged in Glenn's charge were not sufficiently related to the discrimination alleged in connection with the failures to promote.   Each of the three failures to promote Glenn and her furlough appear to be independent, discrete decisions that would prompt independent, discrete action by TCU Local 574.   Even if TCU Local 574 were motivated by the same discriminatory animus, a common animus that manifests itself in separate, discrete decisions does not mean that an EEOC charge complaining of one decision drags in every other decision motivated by that animus.   *Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010) (noting that even if additional alleged acts of discrimination "fit in and become part of an overall general pattern of discrimination," finding such additional acts exhausted "would eviscerate the general rule that each separate act of discrimination must be set out in an EEOC charge before an action can be brought").   There must be some common factual basis showing the decisions in the EEOC charge are related to the decisions left out of the charge.

Here, no evidence in the record shows that TCU Local 574's representation in connection with the four discrete incidents "describe[s] the same conduct" or "implicate[s] the same individuals" such that one representation decision is reasonably related to the others for EEOC charge purposes.   Nor is there any evidence showing that the EEOC's investigation of TCU Local 574's response to Glenn's removal from the GXB was likely to have developed into an investigation of TCU Local 574's response to the three alleged failures to promote.   The EEOC charge simply did not give TCU Local 574 sufficient notice Glenn was complaining of

18

discrimination in connection with her failure to promote representation claims such that it had a

fair opportunity to resolve those claims at the administrative level.   Accordingly, the Court finds

that Glenn failed to present her Title VII claims regarding TCU Local 574's discrimination in

connection with her failure to promote claims to the EEOC before filing this lawsuit and that, as a

consequence, those claims are barred.

2.   Representation in Connection with Furlough

With respect to Glenn's claim that TCU Local 574 discriminated against her in connection

with her furlough, even though she included this claim in her EEOC charge, she has failed to

exhaust her administrative remedies for another reason:   she has not waited for the EEOC to issue

a notice that she has a right to file a civil lawsuit, another prerequisite for filing a lawsuit.

When a complaining party files a charge, Title VII orders the EEOC to serve notice of the

charge on the respondent and to investigate the charge.   42 U.S.C. § 2000e-5(b).   As promptly as

possible, the EEOC must determine whether there is reasonable cause to believe the charge is true.

*Id.*   If the EEOC does not find reasonable cause, it must dismiss the charge; if it finds reasonable

cause, it must endeavor to eliminate the unlawful practice through conference, conciliation or

persuasion.   *Id.*   If reconciliation efforts are unsuccessful, the EEOC may file a federal lawsuit.

42 U.S.C. § 2000e-5(f)(1).   If the EEOC dismisses a charge or fails to file a lawsuit or to enter into

a conciliation agreement within 180 days after the charge is filed, it must notify the complaining

party that she has a right to bring her own lawsuit.   *Id.*   This notice is often referred to as a "right

to sue letter."   Where the EEOC has not taken any action within 180 days, a plaintiff may request

issuance of a right to sue letter and the EEOC must promptly issue that letter.   *See* 29 C.F.R.

§ 1601.28(a)(1).   The complaining party must wait for the EEOC to issue a notice of her right to

19

sue before she can actually file a suit unless the failure to receive a right to sue letter is the EEOC's fault. *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015); *see Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992); *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 128-29 (7th Cir. 1989). She then has ninety days from receiving the right to sue letter to file suit. 42 U.S.C. § 2000e-5(f)(1).

It appears the EEOC has not issued Glenn a right to sue letter authorizing her to sue TCU Local 574 for its failure to represent her in connection with her December 2012 furlough, and there is no evidence the failure was attributable to an EEOC error. Therefore, she has not satisfied the prerequisites for filing a Title VII lawsuit against TCU Local 574, and the Court must dismiss her claim without prejudice.

Even if Glenn had received a right to sue letter for her furlough-related claim before filing this lawsuit, there is no evidence from which a reasonable jury could find TCU Local 574 discriminated against her in its response to her furlough. Such a discrimination claim can be proved in essentially the same way as any other Title VII claim – either directly by direct or circumstantial evidence, or indirectly using a version of the *McDonnell Douglas* burden-shifting mechanism discussed above.

Glenn has presented no direct or circumstantial evidence that would allow a reasonable jury to infer discrimination by TCU Local 574. She suggests Robert Ragland's use of the phrase "Homey don't play that," an expression commonly used by Homey D. Clown, a character played by African-American comedian Damon Wayans on the television show *In Living Color*, *see* Wikia, *In Living Color Guide: Homey D. Clown*, http://inlivingcolor.wikia.com/wiki/ Homey_D._Clown (last visited July 7, 2015), is direct evidence of racial animus. However, to the

extent it demonstrates racial animus, it was an isolated comment, uttered nearly eighteen months after Glenn's furlough, by someone who is not even a member of TCU Local 574, much less the person responsible for making the decision whether to file a grievance.   An isolated stray remark unrelated to the alleged wrongful decision is not enough for a reasonable jury to infer discrimination.   *See Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 568 (7th Cir. 2015); *Sun v. Board of Trs. of Univ. of Ill.*, 473 F.3d 799, 813 (7th Cir. 2007) ("stray remarks that are neither proximate nor related to the employment decision are insufficient to defeat summary judgment").

Glenn also suggests the fact that in 2012 and 2013 TCU Local 574 submitted grievances on behalf of two white clerks but no African-American clerks is circumstantial evidence of discriminatory intent.   However, putting aside the lack of statistical power in Glenn's analysis of a sample of two, in the absence of more information, this statistic is meaningless.   For example, if there were only two white clerks and if every clerk had asked for representation in a dispute, TCU Local 574's decision only to pursue the two white clerks' grievances might have raised an inference of racial bias.   On the other hand, if there were substantially more white clerks than African-American clerks and if only white clerks had asked that grievances be filed, the statistics would not support an inference of discrimination.   Glenn has certainly not pointed to enough evidence in the record to make the statistic meaningful to support a finding of discrimination.

There is also not enough evidence to establish a *prima facie* case of discrimination using the *McDonnell Douglas* burden-shifting mechanism (adapted, of course, to the union representation context).   Glenn has not pointed to any other similarly situated union member of another race or sex who TCU Local 574 treated better than it treated her, so she cannot establish a *prima facie* case of discrimination.

And even if Glenn could establish a *prima facie* case of discrimination, TCU Local 574 has offered a legitimate, non-discriminatory reason for its conduct.   It explained that Gill decided not to file a grievance about Glenn's furlough because, after investigating her furlough, Gill concluded a grievance would have no merit.   She based her decision on her understanding that Glenn had been furloughed when she was bumped from her position on the GXB by another more senior employee as a consequence of Terminal Railroad's abolishing the positions of those employees, and that Glenn was not entitled to bump Bosco because he held a B-2 clerk position.   Under those circumstances, Gill determined that advanced posting or personal notice of the furlough to Glenn was not required by Rule 17, and that, regardless of any possible notice errors to TCU Local 574, Glenn would not be able to get her job back in light of her low seniority.   There is no evidence that the reason proffered by TCU Local 574 for its decision with respect to representing Glenn at that point in time was not truthful and was not the real reason for its decision.   That the facts upon which Gill based TCU Local 574's decisions were revealed as erroneous during discovery does not change the legitimacy or honesty of Gill's reasons at the time, the critical inquiry to prove pretext.   Nor is there any evidence suggesting its real reason was discrimination on the basis of race or sex.

For all of these reasons, the Court finds no reasonable jury could conclude TCU Local 574 discriminated against Glenn on the basis of her sex or race in its representation in connection with Glenn's furlough.   Accordingly, TCU Local 574 is entitled to summary judgment on this aspect of Count 2.

Having found no evidence that Glenn could succeed on her Title VII claim against TCU Local 574, the Court turns to her duty of fair representation claim.

22

C.      Count 2:   Duty of Fair Representation Claim Against TCU Local 574

As the exclusive agent for all bargaining unit members, a union has a corresponding duty to fairly represent those members.   It must "serve the interests of all members without hostility or discrimination toward any, . . . exercise its discretion with complete good faith and honesty, and . . . avoid arbitrary conduct."   *Vaca v. Sipes*, 386 U.S. 171, 177 (1967) (National Labor Relations Act); *see Steele v. Louisville & Nashville R.R. Co.,* 323 U.S. 192, 202 (1944) (Railway Labor Act; "[T]he exercise of a granted power to act in behalf of others involves the assumption toward them of a duty to exercise the power in their interest and behalf.").   A union member may sue her union for breach of the duty of fair representation for a union's conduct in pursuing a grievance or for negotiating a collective bargaining agreement.   *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (labor negotiations); *see, e.g., Vaca*, 386 U.S. at 173 (failure to take grievance to arbitration); *Steele,* 323 U.S. at 192 (1944) (labor negotiations).   A union violates its duty of fair representation when its conduct was arbitrary, discriminatory or in bad faith.   *O'Neill*, 499 U.S. at 67; *Vaca*, 386 U.S. at 190; *Filippo v. Northern Ind. Pub. Serv. Corp.*, 141 F.3d 744, 748 (7th Cir. 1998).

Glenn claims TCU Local 574 breached its duty to fairly represent her when it did not grieve Terminal Railroad's decision to hire other white clerks to fill three regular clerk positions in the spring and summer of 2012 and or its decision to furlough her in December 2012.   As noted above, she claims these decisions were motivated by her race or sex.   Glenn alleges TCU Local 574's conduct amounted to a failure to enforce Terminal Railroad's anti-discrimination policy and the CBA.

TCU Local 574 first argues Glenn's claims are barred by the six-month statute of

limitations.  *See Dozier v. Trans World Airlines, Inc.*, 760 F.2d 849, 851 (7th Cir. 1985).   This limitation period runs from the date the plaintiff discovers or reasonably should have discovered the union's acts that allegedly breached the duty.   *Id.*   TCU Local 574 argues that Glenn knew that it was not going to grieve Terminal Railroad's regular clerk hirings in 2012 and that it was not going to grieve her furlough in March 2013, so her March 2014 suit is untimely.

In response, Glenn argues that she only discovered Terminal Railroad's failure to properly post an abolishment notice for her GXB position or to apply the formula in the GSB Agreement in December 2014 during discovery, so her representation claim only accrued at that time and her March 2014 suit was timely.

### 1.    Statute of Limitations

The Court agrees with TCU Local 574 that Glenn's lawsuit was filed after the six-month statute of limitations had expired.   By failing to address the issue in her briefs, Glenn implicitly concedes this point as to TCU Local 574's failure to grieve Terminal Railroad's failures to promote her to regular clerk positions.   As to TCU Local 574's failure to grieve Glenn's December 2012 furlough, Gill informed Glenn of this decision in March 2013, so the statute of limitations began running at that time.   That Glenn discovered further details about her furlough does not alter the fact that she knew in March 2013 that TCU Local 574 was not going to file a grievance on her behalf.

### 2.    Representation

Even if Glenn had filed a timely suit claiming TCU Local 574 unfairly represented her when it decided not to file a grievance in March 2013, there is no evidence from which a reasonable jury could find for her on such a claim.   As noted above, to succeed on a claim for

breach of the duty of fair representation, Glenn must prove TCU Local 574's conduct was

arbitrary, discriminatory or in bad faith. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67

(1991); *Vaca v. Sipes*, 386 U.S. 171, 190 (1967); *Filippo v. Northern Ind. Pub. Serv. Corp.*, 141

F.3d 744, 748 (7th Cir. 1998).

There is no evidence TCU Local 574's conduct was arbitrary. The arbitrariness inquiry is

objective. "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at

the time of the union's actions, the union's behavior is so far outside a 'wide range of

reasonableness,' . . . as to be irrational." *O'Neill*, 499 U.S. at 67 (quoting *Ford Motor Co. v.*

*Huffman,* 345 U.S. 330, 338 (1953). If there is any rational reason for the union's conduct, it

cannot be found to be arbitrary. *Filippo*, 141 F.3d at 748 (citing *O'Neill*, 499 U.S. at 67). In the

context of pursuing a grievance on behalf of an employee, "a union may not arbitrarily ignore a

meritorious grievance or process it in perfunctory fashion." *Vaca*, 386 U.S. at 191. On the

contrary, it "must provide some minimal investigation of employee grievances, but the

thoroughness of this investigation depends on the particular case, and only an egregious disregard

for union members' rights constitutes a breach of the union's duty." *Filippo*, 141 F.3d at 749

(internal quotations omitted). This standard is extremely deferential to the union's judgment and

requires more than mere negligence or malpractice. *Neal v. Newspaper Holdings, Inc.*, 349 F.3d

363, 369 (7th Cir. 2003) (citing *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 372-73

(1990)); *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995). Even if it is clear in

hindsight that the union should have done things differently, there is no breach of the duty of fair

representation unless the union's conduct was irrational. *Id.* at 1177.

As discussed above, Gill's decision not to file a grievance on Glenn's behalf occurred after

she investigated Glenn's claims and asked Terminal Railroad to reinstate her.   Gill's decision not

to go any further with Glenn's complaint was based on the fact that Terminal Railroad had

informed Gill that Glenn had been bumped from her position by a more senior employee, in which

case no posting of a notice of abolishment or advance notice to Glenn was required.   Gill also

believed Glenn could not bump Bosco because he held a B-2 clerk position and that, regardless of

any irregularities in her furlough, Glenn was essentially the lowest ranking bumpable employee

and would not have been able to keep her position regardless of the circumstances.   In addition,

Glenn never asked Gill to have TCU Local 574 to file a grievance on her behalf and instead told

her she would be filing a lawsuit.   In these circumstances, it was entirely reasonable for Gill to

decide TCU Local 574 should not grieve Glenn's furlough.   The fact that TCU Local 574 learned

later that Glenn's position had been abolished without proper advance posted notice and without

consulting the GXB Agreement formula does not somehow make Gill's decision more than

eighteen months earlier any less rational.

There is also no evidence TCU Local 574's conduct was discriminatory.   A union violates

the duty of fair representation if its discrimination against a worker is "intentional, severe, and

unrelated to legitimate union objectives."   *Amalgamated Ass'n of Street, Elec. Ry. & Motor

Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971); *see Pryner v. Tractor Supply Co.*,

109 F.3d 354, 362 (7th Cir. 1997) (discrimination must be invidious).   In connection with Glenn's

Title VII claims, the Court has thoroughly examined the evidence that might support an inference

of discrimination.   For the same reasons no reasonable jury could find in favor of Glenn on her

Title VII claims, they could also not find TCU Local 574 improperly discriminated against her in

its representation.

Finally, there is no evidence from which a reasonable jury could find TCU Local 574 acted in bad faith in representing Glenn.   Bad faith generally connotes "[d]ishonesty of belief or purpose."   *Black's Law Dictionary* 149 (8th ed. 2004).   The bad faith determination requires inquiry into the subjective motivation behind a union's conduct.   *O'Neill*, 499 U.S. at 74-75. Glenn argues that Robert Ragland's March 2013 request to Terminal Railroad to provide the union notices of abolishment or notices of furloughed employees as required by Rule 17 shows he was aligned with Terminal Railroad, not Glenn.   This simply does not support an inference of bad faith.   First, unions are not disloyal to their employees because they refuse to play a game of "gotcha" with employers, waiting for the slightest breach of an agreement to file a grievance.   On the contrary, their duty is to uphold the CBA so employees get what the employer has agreed to provide, and it does not indicate bad faith when a union points out a shortcoming so the employer can remedy it.   More importantly, Terminal Railroad's failure to provide notices of abolishment and notices of furloughed employees was likely not even a breach.   The notices were not required by a certain time, so whether it actually violated the CBA is unclear.   Robert Ragland's decision to pursue compliance in no way demonstrated bad faith.   Finally, as noted above, Robert Ragland played no role in deciding how TCU Local 574 would respond to Glenn's furlough.   That decision was made by Gill, and there is no evidence of her bad faith.   Even if Robert Ragland's conduct indicated bad faith, that bad faith could not be imputed to Gill.

For these reasons, the Court finds TCU Local 574 is entitled to summary judgment on Glenn's claim that it breached the duty of fair representation in Count 2.

D.   Representation based on Breach of Rule 17

To the extent Glenn asks for summary judgment based on TCU Local 574's 2014-15

27

failure to file a grievance on her behalf once it learned in December 2014 that her position had been abolished, that Terminal Railroad had not been truthful with TCU representatives or Glenn about the mechanism of her termination, that Terminal Railroad had not consulted the GXB Agreement prior to the abolishment of Glenn's position, and that the Rule 17 advance notice of abolishment had not been given, that claim is not part of this case.   Glenn attempted to add such a claim in an amended pleading, but the Court refused to allow the amendment.   Such an amendment would have required additional discovery as to TCU Local 574's conduct in 2014-15, which would have unduly delayed the resolution of this case.

IV.     **Conclusion**

For the foregoing reasons, the Court:

- **GRANTS** TCU Local 574's motion for summary judgment (Doc. 39);

- **GRANTS** Terminal Railroad's motion for summary judgment (Doc. 40);

- **DENIES** Glenn's motion for summary judgment (Doc. 41); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   July 14, 2015**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**